FILED

MAY 21 2014

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **4:14CR152 RWS/NCC** |
| | ) | |
| GREG SLOAN, | ) | Counts I, II, III and IV |
| DOUG SLOAN, | ) | Counts I, II and III |
| IGOR HOLDAIY, | ) | Counts I, II and III |
| ELIZABETH POGUE, | ) | Counts I, II and III |
| CHARLES WOLFE, a/k/a "Chuck Wolfe," | ) | Counts I, II and III |
| BRETT BEEMAN, | ) | Counts I, II, III and IV |
| SHERRI BEEMAN, | ) | Counts I, II and III |
| ROGER GALVIN, | ) | Counts I, II and III |
| JOHN GALVIN, | ) | Counts I, II and III |
| ROBERT JAYNES, JR., | ) | Counts I and II |
| KIRK PARSONS, | ) | Counts I and II |
| DAVID NEAL, and | ) | Counts I, II and III |
| MARCIA GRONEK. | ) | Counts I, II and III |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

## COUNT I

The Grand Jury charges that:

A. Beginning sometime in 2011, and continuing to on or about the date of this Indictment, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

**GREG SLOAN,**
**DOUG SLOAN,**
**IGOR HOLDAIY,**
**ELIZABETH POGUE,**
**CHARLES WOLFE, a/k/a "Chuck Wolfe,"**
**BRETT BEEMAN,**
**SHERRI BEEMAN,**
**ROGER GALVIN,**
**JOHN GALVIN,**

**ROBERT JAYNES, JR.,**
**KIRK PARSONS,**
**DAVID NEAL, and**
**MARCIA GRONEK,**

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, to distribute and to possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues intended for human consumption, in violation of Title 21, United States Code, Sections 841(a)(1) and 813.

B. MANNER AND MEANS OF THE CONSPIRACY

1. It was part of the drug-trafficking conspiracy that defendants GREG SLOAN and DOUG SLOAN operated NEB Distributing, LLC, and Silver Rocket Distributing, LLC, for the purpose of distributing synthetic drugs.

2. It was further part of the drug-trafficking conspiracy that until approximately July, 2012, NEB Distributing, LLC, and Silver Rocket Distributing, LLC, had an exclusive agreement to purchase packaged synthetic drugs from Michael Lentsch and Anwer Rao, d/b/a OPM Midwest, Inc., and TS Botanical, and Roger Upchurch and Mansi Patel, d/b/a Driftwood of Arizona.

3. It was further part of the drug-trafficking conspiracy that NEB Distributing, LLC, and Silver Rocket Distributing, LLC, purchased bulk synthetic drugs from Michael Lentsch and Anwer Rao, d/b/a OPM Midwest, Inc., and TS Botanical.

4. It was further part of the drug-trafficking conspiracy that the synthetic chemicals would contain controlled substances and/or controlled substance analogues including but not limited to:

a) 1-pentyl-3-(1-naphthoyl)indole, also known as "JWH-018;"

b) 1-pentyl-3-(4-methyl-1-naphythoyl)indole, also known as "JWH-122;"

c) 1-pentyl-3-(2-methoxyphenylaceityl)indole, also known as "JWH-250;"

d) 1-(5-fluoropentyl)-3-(1-naphthoyl)indole, also known as "AM-2201;"

e) 2-Pyrrolidinovalerophenone, also known as "a-PVP;"

f) N-(1-adamantyl)-1-pentyl-1H-indazole-3-carboxamide, also known as "AKB48" and "APINACA;"

g) 1-pentyl-3-(1-naphthyl) indole, also known as "XLR-11" and "5-flouro-UR-144;"

h) 2-(methylamina)-1-phenylpentan-1-one, also known as "Pentedrone;"

i) 4-methyl-N-ethylcathinone, also known as "4-Mec;"

j) 5-methoxy-N,N-diallytryptamine, also known as "5-Meo-dalt;"

k) 1-(morpholinoethyl)-3-(2,2,3,3-tetramethlcyclopropoyl)indole, also known as "A796260;"

l) methylenedioxypyrovalerone, also known as "MDPV;" and

m) 1-(5-fluropentyl)-4-methyl-3-(1-naphthoyl)indole, also known as "MAM2201."

5. It was further part of the drug-trafficking conspiracy that the synthetic drugs sold carried names including "Mad Hatter," "Primo," "Optima," "Cloud 9," "Cloud 9 Deew," "Crazy Eyes," and were packaged in foil packets or containers, in one or three gram quantities.

6. It was further part of the drug-trafficking conspiracy that the packaged synthetic drugs would be intended for human consumption although they carried a "not for human consumption" label in an attempt to avoid drug-trafficking laws.

7. The synthetic products would be consumed, primarily by smoking or snorting the substance in order to obtain a "high."

8. It was further part of the drug-trafficking conspiracy that the defendants would make sure the chemicals utilized to manufacture the synthetic drugs were changed in an attempt to avoid federal drug scheduling regulations while still producing products which had the same physiological effect creating a "high" that mimics the effects of a controlled substance.

9. It was further part of the drug-trafficking conspiracy that defendant IGOR HOLDAIY leased and operated the packaging facility for NEB Distributing, LLC's synthetic drugs.

10. It was further part of the drug-trafficking conspiracy that defendant ELIZABETH POGUE was an office manager at NEB Distributing, LLC, and Silver Rocket Distributing, LLC, involved in maintaining books and records and also sold synthetic drugs through a company called "Throttle Up."

11. It was further part of the drug-trafficking conspiracy that defendant CHARLES WOLFE, a/k/a "Chuck Wolfe," d/b/a Psychedelic Blur, LLC, sold synthetic drugs obtained through NEB Distributing, LLC.

12. It was further part of the drug-trafficking conspiracy that defendant MARCIA GRONEK sold synthetic drugs obtained from NEB Distributing LLC.

13. It was further part of the drug-trafficking conspiracy that defendants Brett BEEMAN and SHERRI BEEMAN, d/b/a Hippie Daze Distribution, sold synthetic drugs obtained through NEB Distributing, LLC.

14. It was further part of the drug-trafficking conspiracy that defendants BRETT BEEMAN and SHERRI BEEMAN, d/b/a Hippie Daze Distribution, also manufactured

a blend of synthetic drugs, including "Hippie Daze," "Sniper," and "Gone Fishin Incense," which they supplied to NEB Distributing, LLC.

15. It was further part of the drug-trafficking conspiracy that defendants ROBERT JAYNES, JR., KIRK PARSONS, and DAVID NEAL, sold synthetic drugs obtained through NEB Distributing, LLC.

16. It was further part of the drug-trafficking conspiracy that at a time following the execution of search warrants at the offices and storage facilities of NEB Distributing, LLC, in July, 2012, the conspiracy continued the manufacturing and packaging of synthetic drugs in the State of Indiana.

17. It was further part of the drug-trafficking conspiracy that at a time after July, 2012, defendants ROBERT JAYNES, JR. and KIRK PARSONS undertook the manufacturing and packaging of synthetic drugs in the State of Indiana which were distributed by defendants GREG SLOAN, DOUG SLOAN and others in the St. Louis, Missouri, area as well as many other parts of the United States.

18. It was further part of the drug-trafficking conspiracy that the product names were periodically changed or supplemented and subsequent synthetic drug products were sold under names including "Darkness," "Avalon," "Kite," and "Pirates Booty."

19. It was further part of the drug-trafficking conspiracy that in 2013 and 2014, defendant DAVID NEAL would manufacture and package synthetic drugs which were distributed by defendants GREG SLOAN, DOUG SLOAN and others in the St. Louis, Missouri, area as well as many other parts of the United States.

All in violation of Title 21, United States Code, Section 846.

**COUNT II**

The Grand Jury further charges that:

A. Beginning sometime in 2011, and continuing to on or about the date of this Indictment, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

**GREG SLOAN,**
**DOUG SLOAN,**
**IGOR HOLDAIY,**
**ELIZABETH POGUE,**
**CHARLES WOLFE, a/k/a "Chuck Wolfe,"**
**BRETT BEEMAN,**
**SHERRI BEEMAN,**
**ROGER GALVIN,**
**JOHN GALVIN,**
**ROBERT JAYNES, JR.,**
**KIRK PARSONS,**
**DAVID NEAL, and**
**MARCIA GRONEK,**

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, with the intent to defraud and mislead, to:

a) cause the introduction of misbranded drugs into interstate commerce, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2);

b) receive and cause the receipt of misbranded drugs in interstate commerce and to deliver and proffer delivery thereof for pay or otherwise, in violation of Title 21, United States Code, Sections 331(c) and 333(a)(2); and

c) do and cause to be done acts with respect to the synthetic drugs, while such drugs were held for sale after being shipped in interstate commerce, that resulted in such synthetic drugs being misbranded, in violation of Title 21, United States Code, Sections 331(k) and 333(a)(2).

B. MANNER AND MEANS OF THE CONSPIRACY

1. The allegations set forth in paragraphs 1 through 19 of the Manner and Means section of Count I are re-alleged and fully incorporated herein.

2. It was part of the misbranding conspiracy that the defendants would package and sell synthetic drugs either through NEB Distributing, LLC, Silver Rocket Distributing, LLC, Psychedelic Blur, LLC, Throttle Up, G&B Novelty, LLC, Hippie Daze, Beautiful Cars of Indiana, I.H. Carrier and Distribution, Midwest Repco, Central Store Supplies, West Strong Wholesale, IDK Anything, Tight 30 Entertainment, or similar companies controlled by one or more of the defendants, throughout the United States.

3. It was part of the misbranding conspiracy that defendants and their retailers falsely and misleadingly referred to their synthetic drug products as "incense," "herbal incense," "potpourri," "herbal sachets," and other erroneous names when, in fact, such products were synthetic drugs intended for human consumption in order to obtain the physiological effect of a "high."

4. Each of the drugs was misbranded in at least one of the following respects:

a) the synthetic drugs' packaging did not bear adequate directions for use;

b) the synthetic drugs were falsely labeled in a manner indicating they were not for human consumption when, in fact, the synthetic drugs were intended for human consumption;

c) the synthetic drugs' packaging failed to accurately identify the contents and intended use;

d) the synthetic drugs' packaging did not bear a label containing the name and place of the business, the manufacturer, packer, or distributor; and

e) the synthetic drugs' labeling did not include adequate warnings against unsafe dosages, methods, or durations of administration or application, in such manner and form as were necessary for the protection of users of the drugs.

5. Defendants intended to defraud and mislead government authorities regarding the products' status as synthetic drugs with the purpose of avoiding regulation over the drugs and enabling themselves to continue selling the drugs in exchange for money.

C. OVERT ACTS

1. Defendants committed overt acts in furtherance of the conspiracy, including, but not limited to the following:

a) advertised the misbranded synthetic drugs over the internet;

b) utilized the telephone to market and fill orders for misbranded drugs;

c) sold, shipped and/or transported misbranded synthetic drugs throughout the United States utilizing both commercial carriers and the United States Postal Service; and

d) shipped samples of the synthetic drugs to a lab in Virginia for testing the results of which were fraudulently utilized in the marketing of the synthetic drugs.

All in violation of Title 18, United States Code, Section 371.

**COUNT III**

The Grand Jury further charges that:

A. Beginning sometime in 2011, and continuing through on or about 2012, with the exact dates unknown to this Grand Jury, in the Eastern District of Missouri and elsewhere,

**GREG SLOAN,**
**DOUG SLOAN,**

**IGOR HOLDAIY,**
**ELIZABETH POGUE,**
**CHARLES WOLFE, a/k/a "Chuck Wolfe,"**
**BRETT BEEMAN,**
**SHERRI BEEMAN,**
**ROGER GALVIN,**
**JOHN GALVIN,**
**DAVID NEAL, and**
**MARCIA GRONEK,**

the defendants herein, did conspire with others known and unknown to this Grand Jury, to knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally-derived property of a value greater than $10,000, that is the transfer or movement of funds, such property having been derived from a specified unlawful activity, that is, conspiracy to distribute and possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues for human consumption, in violation of Title 21, United States Code, Sections 841(a)(1), 846, and 813, as described in Count I.

B. MANNER AND MEANS OF THE CONSPIRACY

1. It was part of the money laundering conspiracy that defendant GREG SLOAN formed NEB Distributing, LLC, and Silver Rocket Distributing, LLC, to purchase and distribute synthetic drugs. It was further part of the money laundering conspiracy that defendant Greg SLOAN used these corporate entities to operate a synthetic drug enterprise that sold synthetic drugs across the United States of America on behalf of the members of NEB Distributing, LLC, and himself in the total amount of approximately $18,203,456.00.

2. It was further part of the money laundering conspiracy that the defendants GREG SLOAN, DOUG SLOAN, IGOR HOLDAIY, ELIZABETH POGUE, CHARLES A. WOLFE, a/k/a "Chuck Wolfe," BRETT BEEMAN, SHERRI BEEMAN, ROGER GALVIN,

JOHN GALVIN, DAVID NEAL, and MARCIA GRONEK, and others operated as members of a synthetic drug distribution network under the umbrella of NEB Distributing, LLC, and Silver Rocket Distributing, LLC (hereinafter collectively referred to as "NEB").

3. It was further part of money laundering conspiracy that the members of NEB obtained and maintained an exclusive agreement to purchase, market, and distribute synthetic drugs manufactured under the "Cloud 9" brand name by and/or on behalf of Anwer Rao and Michael Lentsch, d/b/a OPM Midwest, Inc., and TS Botanicals, Inc. These synthetic drugs included products sold in 1 gram and 3 gram foil packages marketed as "incense," "herbal incense," "potpourri," "herbal sachets" and named "Cloud 9," "Cloud 9 Deew," "Mad Hatter," "Primo," "Crazy Eyes" and "Optima."

4. It was further part of the money laundering conspiracy that these members of NEB marketed, distributed, and trafficked in these same synthetic drugs in interstate commerce through telemarketing sales, traditional wholesale distribution methods, and internet websites.

5. It was further part of the money laundering conspiracy that the members of NEB provided their customers and the public with laboratory reports designed to deceive them and members of the law enforcement community into believing the synthetic drugs NEB was distributing did not contain any controlled substances and controlled substance analogues. These laboratory reports were commonly referred to as a "does not contain" report.

6. It was further part of the money laundering conspiracy that the defendants GREG SLOAN, DOUG SLOAN, IGOR HOLDAIY, ELIZABETH POGUE, CHARLES A. WOLFE, a/k/a "Chuck Wolfe," BRETT BEEMAN, SHERRI BEEMAN, ROGER GALVIN, JOHN GALVIN, DAVID NEAL, MARCIA GRONEK, and other members of NEB opened

bank accounts in business names, nominee names, and their own individual names to launder the drug proceeds they received from the sale of synthetic drugs.

7. It was further part of the money laundering conspiracy that defendants GREG SLOAN, ELIZABETH POGUE, ROGER GALVIN and JOHN GALVIN deposited U.S. currency derived from the sale of synthetic drugs into NEB Distributing, LLC's and Silver Rocket Distributing, LLC's bank accounts at various financial institutions.

8. It was further part of the money laundering conspiracy that defendants DOUG SLOAN and DAVID NEAL, both residents of Indiana, formed and operated Beautiful Cars of Indiana (BCOI). It was further part of the money laundering conspiracy that defendants DOUG SLOAN and DAVID NEAL sold synthetic drugs on behalf of the members of NEB and themselves in the approximate amount of $2,263,362.00.

9. It was further part of the money laundering conspiracy that defendant IGOR HOLDAIY formed and operated I.H. Carrier and Distribution. It was further part of the money laundering conspiracy that defendant IGOR HOLDAIY sold synthetic drugs on behalf of the members of NEB and himself in the approximate amount of $149,532.50.

10. It was further part of the money laundering conspiracy that defendant ELIZABETH POGUE formed Throttle Up, LLC. It was further part of the money laundering conspiracy that defendant ELIZABETH POGUE sold synthetic drugs on behalf of the members of NEB and herself in the approximate amount of $133,487.25.

11. It was further part of the money laundering conspiracy that defendant CHARLES WOLFE, a/k/a "Chuck Wolfe," formed Psychedelic Blur, LLC. It was further part of the money laundering conspiracy that defendant CHARLES WOLFE, a/k/a "Chuck Wolfe," sold

synthetic drugs on behalf of the members of NEB and himself in the approximate amount of $2,481,726.40.

12. It was further part of the money laundering conspiracy that defendants BRETT BEEMAN and GREG SLOAN formed G&B Novelty, LLC. It was further part of the money laundering conspiracy that defendants BRETT BEEMAN and SHERRI BEEMAN sold synthetic drugs on behalf of the members of NEB and themselves in the approximate amount of $144,892.39.

13. It was further part of the money laundering conspiracy that defendant ROGER GALVIN operated under the name Midwest Repco, LLC. It was further part of the money laundering conspiracy that defendant ROGER GALVIN sold synthetic drugs on behalf of the members of NEB and himself in the approximate amount of $435,458.25.

14. It was further part of the money laundering conspiracy that defendant GREG SLOAN caused and authorized the following checks from the bank account of NEB Distributing, LLC, to be issued payable to TS Botanicals, Inc., to purchase the synthetic drugs distributed by NEB:

| ITEM | DATE | MONETARY TRANSACTION |
|---|---|---|
| 1 | 04/07/2011 | NEB Distributing, LLC check number 1651 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $35,565.00 |
| 2 | 05/06/2011 | NEB Distributing, LLC check number 1674 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $50,000.00 |
| 3 | 05/26/2011 | NEB Distributing, LLC check number 1691 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $100,000.00 |
| 4 | 05/26/2011 | NEB Distributing, LLC check number 1692 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $35,565.00 |

| ITEM | DATE | MONETARY TRANSACTION |
|---|---|---|
| 5 | 06/09/2011 | NEB drafted NEB Distributing, LLC check number 1710from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $100,000.00 |
| 6 | 06/10/2011 | NEB Distributing, LLC check number 1722 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $50,000.00 |
| 7 | 06/24/2011 | NEB Distributing, LLC check number 1735 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $100,000.00 |
| 8 | 07/08/2011 | NEB Distributing, LLC check number 1750 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $100,000.00 |
| 9 | 07/09/2011 | NEB Distributing, LLC check number 1761 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $150,000.00 |
| 10 | 07/21/2011 | NEB Distributing, LLC check number 1762 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $50,000.00 |
| 11 | 07/22/2011 | NEB Distributing, LLC check number 1764 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $50,000.00 |
| 12 | 08/05/2011 | NEB Distributing, LLC check number 1789 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $150,000.00 |
| 13 | 08/15/2011 | NEB Distributing, LLC check number 1795 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $225,000.00 |
| 14 | 08/18/2011 | NEB Distributing, LLC check number 1802 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $150,000.00 |
| 15 | 08/31/2011 | NEB Distributing, LLC check number 1816 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $160,000.00 |
| 16 | 09/08/2011 | NEB Distributing, LLC check number 1830 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $150,000.00 |
| 17 | 09/14/2011 | NEB Distributing, LLC check number 1837 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $100,000.00 |
| 18 | 09/21/2011 | NEB Distributing, LLC check number 1846 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $177,322.00 |

| ITEM | DATE | MONETARY TRANSACTION |
|---|---|---|
| 19 | 10/05/2011 | NEB Distributing, LLC check number 1869 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $200,000.00 |
| 20 | 10/17/2011 | NEB Distributing, LLC check number 1878 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $200,000.00 |
| 21 | 10/19/2011 | NEB Distributing, LLC check number 1890 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $100,000.00 |
| 22 | 10/26/2011 | NEB Distributing, LLC check number 1908 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $200,000.00 |
| 23 | 11/02/2011 | NEB Distributing, LLC check number 1913 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $200,000.00 |
| 24 | 11/10/2011 | NEB Distributing, LLC check number 1926 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $200,000.00 |
| 25 | 11/11/2011 | NEB Distributing, LLC check number 1934 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $188,901.00 |
| 26 | 11/30/2011 | NEB Distributing, LLC check number 2004 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $300,000.00 |
| 27 | 12/01/2011 | NEB Distributing, LLC check number 2007 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $100,000.00 |
| 28 | 12/07/2011 | NEB Distributing, LLC check number 2011 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $350,000.00 |
| 29 | 12/21/2011 | NEB Distributing, LLC check number 2034 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $250,000.00 |
| 30 | 01/09/2012 | NEB Distributing, LLC check number 2047 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $200,000.00 |
| 31 | 01/13/2012 | NEB Distributing, LLC check number 2061 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $402,980.00 |
| 32 | 01/19/2012 | NEB Distributing, LLC check number 2051 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $400,000.00 |

| ITEM | DATE | MONETARY TRANSACTION |
|---|---|---|
| 33 | 02/01/2012 | NEB Distributing, LLC check number 2071 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $377,642.50 |
| 34 | 02/08/2012 | NEB Distributing, LLC check number 2077 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $470,302.50 |
| 35 | 02/20/2012 | NEB Distributing, LLC check number 2101 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $549,650.00 |
| 36 | 02/29/2012 | NEB Distributing, LLC check number 2108 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $231,677.00 |
| 37 | 03/29/2012 | NEB Distributing, LLC check number 2140 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $1,000,000.00 |
| 38 | 04/19/2012 | NEB Distributing, LLC check number 2151 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $500,000.00 |
| 39 | 05/07/2012 | NEB Distributing, LLC check number 2176 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $400,000.00 |
| 40 | 05/16/2012 | NEB Distributing, LLC check number 2183 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $300,000.00 |
| 41 | 06/07/2012 | NEB Distributing, LLC check number 2201 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $600,000.00 |
| 42 | 06/26/2012 | NEB Distributing, LLC check number 2220 from Regions Bank account ending in 1090 payable to TS Botanicals, Inc. in the amount of $400,000.00 |

All in violation of Title 18, United States Code, Sections 1957 and 1956(h).

**COUNT IV**

The Grand Jury further charges that:

Beginning in or about May 2011, and continuing through on or about 2012, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

**GREG SLOAN and**
**BRETT BEEMAN,**

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, to import Schedule I controlled substance analogues intended for human consumption as provided in Title 21, United States Code, Section 813, into the United States from a place outside thereof.

All in violation of Title 21, United States Code, Sections 952, 960(a)(1), 960(b)(3), and 963.

**FORFEITURE ALLEGATION**

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 21, United States Code, Section 853(a), upon conviction of an offense in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 813, as set forth in Count I of this Indictment, the defendants GREG SLOAN, DOUG SLOAN, IGOR HOLDAIY, ELIZABETH POGUE, CHARLES WOLFE, a/k/a "Chuck Wolfe," BRETT BEEMAN, SHERRI BEEMAN, ROGER GALVIN, JOHN GALVIN, ROBERT JAYNES, JR., KIRK PARSONS, DAVID NEAL, and MARCIA GRONEK shall forfeit to the United States of America:

a) any property, constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of such violation;

b) any property used, or intended to be used, in any manner or part to commit or to facilitate the commission of such offenses; and

c) a sum of money, no less than $12,000,000.00, that is equal to the total value of property, real or personal, involved in said offense and all property, real or personal, traceable to such violations.

2. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Sections 1957 and 1956(h), as set forth in Count III of the Indictment, the defendants GREG SLOAN, DOUG SLOAN, IGOR HOLDAIY, ELIZABETH POGUE, CHARLES WOLFE, a/k/a "Chuck Wolfe," BRETT BEEMAN, SHERRI BEEMAN, ROGER GALVIN, JOHN GALVIN, DAVID NEAL, and MARCIA GRONEK shall forfeit to the United States of America:

a) any property, real or personal, involved in said offense or any property, real or personal, traceable to such property; and

b) a sum of money, no less than $12,000,000.00, that is equal to the total value of property, real or personal, involved in said offense and all property, real or personal, traceable to such violations.

3. Specific property subject to forfeiture includes, but is not limited to, the following:

a) $16,115.00 U.S. currency seized from 859 North Business 5, Camdenton, Missouri;

b) All monies, funds, and financial instruments deposited or credited to First National Bank, account ending in 3890, in the name of BRETT and SHERRI BEEMAN; and

c) $11,213.00 U.S. currency seized from MARCIA GRONEK on April 22, 2013.

4. If any of the property described above, as a result of any act or omission of the defendants:

a) cannot be located upon the exercise of due diligence;

b) has been transferred or sold to, or deposited with, a third party;

c) has been placed beyond the jurisdiction of the court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

______________________________
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

______________________________
JAMES C. DELWORTH, #29702MO
ERIN O. GRANGER, #53593MO
Assistant United States Attorneys